**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**GREENVILLE DIVISION**

**STEPHEN P. FARMER, et al.**                                                                    **PLAINTIFFS**

**V.**                                                                    **NO. 4:12-CV-0073-DMB-JMV**

**D&O CONTRACTORS, INC., et al.**                                                                    **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

This action arises from allegations of civil racketeering violations involving Federal Emergency Management Agency ("FEMA") funded subcontracts for cleanup work in Saint Bernard Parish, Louisiana ("St. Bernard Parish"), after the area was devastated by Hurricane Katrina.  Defendants have filed three separate motions to dismiss this case under Rule 12(b) of the Federal Rules of Civil Procedure for lack of personal jurisdiction, improper venue, and/or failure to state a claim upon which relief can be granted.  Defendants alternatively request that the case be transferred to the Eastern District of Louisiana because most of the alleged acts occurred in that judicial district and because all Defendants are residents of Louisiana.  Plaintiffs responded in opposition to the motions, arguing that the case is properly before this Court and that the complaint contains sufficient facts to state a claim for relief.  For the reasons below, the Court finds that it lacks personal jurisdiction over certain defendants and that, because personal jurisdiction and venue are proper in the Eastern District of Louisiana, the case should be transferred to that court.

**I.**

On August 29, 2005, St. Bernard Parish was struck by Hurricane Katrina.  Flooding ensued and severely damaged the area.  Following the hurricane, the United States Government provided funding through FEMA to St. Bernard Parish for disaster relief.  In turn, St. Bernard

Parish entered a demolition and debris removal contract with United Recovery Group, Inc. ("URG") to perform post-Katrina cleanup in the area. URG hired subcontractors, including Defendant D&O Contractors, Inc. ("D&O Contractors"), to assist with the debris removal and other cleanup efforts. Compl. [1] at 14. D&O Contractors then hired Plaintiffs Stephen P. Farmer, Robert L. Casey, and Curt C. Causey to assist with the cleanup.

Plaintiff Stephen P. Farmer performed debris removal cleanup through his company, Plaintiff Farmer Enterprises, Inc. (collectively, "Plaintiff Farmer").[1] Plaintiff Robert L. Casey provided cleanup assistance through his company, Plaintiff Truck & Equipment Enterprises (collectively, "Plaintiff Casey"). Plaintiff Curt C. Causey provided cleanup assistance through his company, Plaintiff Cross Country Recycling, LLC (collectively, "Plaintiff Causey"). All Plaintiffs allege that after they began assisting with the post-Katrina cleanup in St. Bernard Parish, they were required to pay certain defendants part of their earnings as "protection" to ensure that they could continue doing cleanup work under the FEMA funded subcontracts. *See* Compl. [1] at 17-21.

Defendant D&O Contractors is a Louisiana corporation owned by Defendant John Michael "Mike" O'Malley. Defendant Daniel P. "Dan" Wagner is a former owner of D&O Contractors, and he allegedly served as a manager at D&O Contractors during all times relevant to this lawsuit. Defendants Lance Licciardi and Randy Nunez are law partners in Louisiana who allegedly conspired against and made extortionate demands to Plaintiffs for their post-Katrina

---

[1] Plaintiff Farmer claims that D&O Contractors refused to enter into a written contract for the work until February 2006. No written contract between D&O Contractors and any of the plaintiffs is included in the record. Plaintiffs allege that "D&O Contracting [sic] refused to provide a written contract to Plaintiffs Farmer and Farmer Enterprises when Plaintiff initially began removing debris. Plaintiff was told there would be no written contract so Plaintiff's work could be terminated for any reason at any time. Plaintiff worked as many as fourteen transport trucks removing debris under this arrangement until February of 2006, when written contracts became required." Compl. [1] at 15-16. Plaintiffs do not explain the reason that written contracts became required.

cleanup earnings.  Defendant Jeff Difatta is a Louisiana resident who also allegedly conspired against and made extortionate demands to Plaintiffs for their cleanup earnings.

On July 30, 2012, Plaintiffs filed a complaint in this Court alleging that Defendants engaged in civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and the Louisiana Racketeering Act ("LRA"), LA. REV. STAT. ANN. § 15:1353.  Plaintiffs specifically allege that Defendants were parties to a RICO enterprise and that they engaged in a pattern of racketeering activities such as extortion, stealing property, conversion, mail and wire fraud, money laundering, Travel Act violations under 18 U.S.C. § 1952, and conspiracy.  *See* Compl. [1] at 21-33.  Plaintiffs seek actual damages, compensatory damages, treble damages, attorneys' fees, pre and post-judgment interest, and equitable relief. *Id.* at 33.

On August 26, 2013, Defendant Difatta filed a motion to dismiss the case for lack of personal jurisdiction, improper venue, and failure to state a claim.  Mot. [12].  The same day, Defendants D&O Contractors, O'Malley, and Wagner filed a motion to dismiss based on lack of personal jurisdiction over O'Malley and Wagner, improper venue, and failure to state a claim. Mot. [14].  Defendants D&O Contractors, O'Malley, and Wagner alternatively move for transfer of venue to the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404(a).  In support of their motions, Defendants Difatta, O'Malley, and Wagner submitted sworn affidavits attesting that they are resident citizens of Louisiana and have never resided in Mississippi.  *See* Docs. [12-1][14-1][14-2].

On August 27, 2013, Defendants Nunez and Licciardi filed a motion to dismiss or, in the alternative, to transfer the case based on improper venue and failure to state a claim.  Mot. [16]. All motions have been fully briefed and are ripe for decision.

**II.**

The Court has federal subject matter jurisdiction over Plaintiffs' RICO claims under 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' LRA claims because the LRA and RICO claims are "so related … that they form part of the same case or controversy under Article III of the United States Constitution."  *See id*. at § 1367(a).

**A.**

Defendants argue that this Court lacks personal jurisdiction over Difatta, O'Malley, and Wagner because they do not have minimum contacts with the State of Mississippi and exercising personal jurisdiction over them would violate due process.  Defendants do not challenge personal jurisdiction as to D&O Contractors, Licciardi, and Nunez; therefore, they appear to concede personal jurisdiction over these individuals.  *See Adams v. Unione Mediterranea Di Sicurta,* 220 F.3d 659, 667 (5th Cir. 2000) ("Usually a party waives personal jurisdiction by failing to raise the issue when filing a responsive pleading or making a general appearance.") (citation omitted); *Travelers Indem. Co. v. Calvert Ins. Co.*, 798 F.2d 826, 834 (5th Cir. 1986) ("Clearly parties can waive lack of personal jurisdiction.") (citation omitted).  In response, Plaintiffs argue that Defendants are required only to have minimum contacts with the United States, not Mississippi, in order for this Court to have personal jurisdiction over them.  Defendants refute this argument and contend that the ends of justice do not require Plaintiffs' RICO claims to be decided in this Court.  Having considered the parties' arguments, the Court will now evaluate whether it has personal jurisdiction over Defendants Difatta, O'Malley, and Wagner.

4

"The burden of establishing personal jurisdiction over a non-resident defendant lies with the plaintiff." *Ainsworth v. Moffett Engineering, Ltd.,* 716 F.3d 174, 176 (5th Cir. 2013) (citing *Clemens v. McNamee,* 615 F.3d 374, 378 (5th Cir. 2010)).  Plaintiffs' basis for personal jurisdiction over Defendants is RICO's venue and process provisions, which provide for nationwide service of process.  *See* 18 U.S.C. § 1965(a), (b); *see also* Pls.' Response [25] at 3 ("Moreover, in any event, the Court has personal jurisdiction and venue over all Defendants under RICO § 1965's national service of process provisions.").  Title 18 U.S.C. § 1965 states, in relevant part:

> (a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs.

> (b) In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

Plaintiffs rely on the Fifth Circuit's decision in *Busch v. Buchman, Buchman & O'Brien, Law Firm,* to support their argument that Defendants are not required to have minimum contacts with the forum.  *See* 11 F.3d 1255, 1258 (5th Cir. 1994).  In *Busch*, the Fifth Circuit held that "when a federal court is attempting to exercise personal jurisdiction over a defendant in a suit based upon a federal statute providing for nationwide service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States."  *Id.* (citations omitted).  For these cases, "the relevant sovereign is the United States, and … the due process concerns of the Fifth Amendment are satisfied and traditional notions of fair play and substantial justice are not offended where a court exercises personal jurisdiction over a defendant residing

5

within the United States." *Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 825 (5th Cir. 1996) (citing *Busch*, 11 F.3d at 1258).

In *Bellaire,* a subsequent panel of the Fifth Circuit criticized the *Busch* ruling "to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign." *See* 97 F.3d at 826 ("[W]e emphasize our disagreement with [*Busch*] to the extent it concludes that the proper personal jurisdiction test in a national service of process case is whether minimum contacts exist between the individual and the national sovereign.  We view personal jurisdiction and service of process as conceptually distinct issues.") (citation omitted).  Although the panel questioned *Busch*, it nevertheless applied the ruling and determined that the district court properly exercised personal jurisdiction over the defendant because the defendant had sufficient minimum contacts with the United States. *See id.* ("Thus, though we follow *Busch* today and find that the district court properly exercised personal jurisdiction over Blue Cross in this case, we do so with grave misgivings regarding the authority upon which we rely."). *See also Luallen v. Higgs*, 277 F. App'x 402, 405 (5th Cir. 2008) ("Likewise, we dutifully apply *Busch* and conclude that the district court properly exercised personal jurisdiction over the defendants … based on their sufficient contacts with the United States.).

The case before this Court differs from *Busch* and *Bellaire* because, here, RICO is the federal law providing for nationwide service of process.  In *Busch*, nationwide service was provided under the Securities Exchange Act of 1934.  11 F.3d at 1257.  In *Bellaire*, nationwide service was provided under the Employee Retirement Income Security Act ("ERISA").  97 F.3d at 825.  Unlike the federal statutes in those cases, RICO allows nationwide service only when "the ends of justice require that <u>other</u> <u>parties</u> residing in any other district be brought before the

court." 18 U.S.C. § 1965(b) (emphasis added).  The plain language of the statute implies that there must already be at least one party over which the district court has personal jurisdiction; even then, nationwide service is not allowed unless "the ends of justice require" the other non-resident parties to be brought before the court.  *See id.*

In *Caldwell v. Palmetto State Savings Bank of South Carolina*, the Fifth Circuit addressed whether RICO confers a district court with personal jurisdiction over non-resident defendants based on the defendants having sufficient minimum contacts with the United States.  *See* 811 F.2d 916, 918 (5th Cir. 1987).  The plaintiffs in *Caldwell* argued that the district court had personal jurisdiction over the defendants because RICO provides for nationwide service.  *Id.* at 918.  The Fifth Circuit recognized "the language in § 1965(a) that provides a civil action may be instituted where a defendant 'resides, is found, has an agent, or transacts his affairs.'"  *Id.* (quoting 18 U.S.C. § 1965(a)).  It held that, because the defendants did not meet the requirements under § 1965(a), RICO did not "provide a basis for in personam jurisdiction." 811 F.2d at 918.

Much like the defendants in *Caldwell*, Defendants Difatta, O'Malley, and Wagner do not appear to meet the requirements under § 1965(a).  Difatta, O'Malley, and Wagner are not residents of Mississippi, have not entered any contracts to perform work in Mississippi, and do not conduct or regularly conduct their business affairs in Mississippi.[2]  Further, Plaintiffs do not submit any evidence indicating that Difatta, O'Malley, or Wagner "resides, is found, has an agent, or transacts his affairs" in Mississippi.[3]  Instead, Plaintiffs argue that RICO's nationwide

---

[2] *See* Difatta Aff. [12-1] at 1 ("I do not, nor have I ever, done business, performed work, or provided services in Mississippi."); O'Malley Aff. [14-1] at 2 ("I do not regularly conduct my personal or business affairs in the State of Mississippi."); Wagner Aff. [14-2] at 2 ("I do not regularly conduct my personal or business affairs in the State of Mississippi.").

[3] Plaintiffs only generally argue that O'Malley continued to extort Plaintiff Farmer after Farmer returned to Mississippi.  *See* Pls.' Response [25] at 14 ("As alleged in the complaint, for example, Defendant O'Malley, the

service provision confers personal jurisdiction over Defendants. As noted above, RICO provides nationwide service of process on a limited basis.[4] First, the district court must have personal jurisdiction over at least one defendant; and second, the ends of justice must require that other nonresident defendants be brought before the court. *See* § 1965(b).

Plaintiffs argue that this Court has personal jurisdiction over three Defendants because D&O Contractors, Nunez, and Licciardi do not challenge personal jurisdiction and have, therefore, conceded it. Plaintiffs further argue that the "ends of justice" provision is satisfied because Difatta, O'Malley, and Wagner are residents of and conduct business in the United States.[5] In response, Defendants argue that the "ends of justice" do not require this case to be tried in this Court because an alternative forum, the Eastern District of Louisiana, has personal jurisdiction over all Defendants.

Another federal court in this state has interpreted the "ends of justice" under § 1965(b) as a means "to enable a plaintiff to bring before a single court for trial all members of a nationwide RICO conspiracy." *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F. Supp. 325, 330 (S.D. Miss. 1989). *See Flores v. Koster*, 3:11-cv-0726-M-BH, 2013 WL 4874117, at *5 (N.D. Tex. June 28, 2013) (Lynn, J.) ("The 'ends of justice' provision was intended to 'enable plaintiffs to bring *all* members of a nationwide RICO conspiracy before a court in a single trial.'") (citations omitted). The Southern District of Mississippi has determined that the ends of

---

owner and agent of D&O Contractors, Inc. during the relevant time period continued to extort Defendant Farmer on behalf of his co-conspirators 'Even after Plaintiff Farmer returned to Mississippi ….'") (citations omitted); Compl. [1] at 18-20.

[4] The Fifth Circuit has not yet decided which subsection of § 1965 confers nationwide service of process. *See Rolls-Royce Corp. v. Heros, Inc.* 576 F. Supp. 2d 765, 779 (N.D. Tex. 2008) (observing that Fifth Circuit has not decided issue of which § 1965 subsection confers nationwide service and noting that Eastern District of Texas found that § 1965(b) confers nationwide service).

[5] Pls.' Response [25] at 13 ("Furthermore, Defendants' suggestion that RICO's nationwide service and personal jurisdiction is limited by the 'ends of justice' provision is nothing more than a diversion. As noted above, in the Fifth Circuit, the 'ends of justice' provision is satisfied by being a resident and conducting business in the United States.").

justice requirement is met "when defendants have minimum contacts with the United States, at least one defendant is subject to personal jurisdiction in the forum state, and no other forum exists in which to adjudicate all of the RICO claims." *Dale v. Ala Acquisitions, Inc.*, 203 F. Supp. 2d 694, 698-99 (S.D. Miss. 2002) (citations omitted). *See Anchor Glass*, 711 F. Supp. at 331 ("In addition to the requirement that there be one defendant properly before the court, another factor which favors the imposition of nationwide service under the RICO statute based on an 'ends of justice' finding is the lack of an alternative forum."); *see also Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) ("For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.") (citation omitted).

Applying that standard to the present matter, this Court finds that imposition of RICO's nationwide service and personal jurisdiction provisions is not appropriate here because there is an alternative forum where this suit may be heard. This Court has personal jurisdiction over D&O Contractors, Nunez, and Licciardi only because they concede this issue. However, all Defendants are residents of and do business in Louisiana, and the alleged racketeering activity took place almost exclusively in Louisiana.[6] Plaintiff Farmer is the only party that is a resident of Mississippi. Considering these facts, the Eastern District of Louisiana has personal jurisdiction over all Defendants and is an alternative forum where this case may be decided. Because there is an alternative forum, the ends of justice do not require that Defendants Difatta, O'Malley, and Wagner be brought before this Court. *See Anchor Glass*, 711 F. Supp. at 331

---

[6] *See Chambers v. Mayo*, No. 3:10-cv-525, 2011 WL 1578512, at *2 (S.D. Miss. Apr. 27, 2011) (Reeves, J.) (finding that "this district is still a forum unrelated to the heart of the instant case because hardly any of the predicate acts giving rise to the RICO claims occurred in Mississippi") (citations omitted).

(finding that because "there is a venue which is appropriate as to all of the defendants, the Southern District of Ohio, … the ends of justice do not even suggest, much less require, that this court exercise jurisdiction over all of the defendants in this forum").

Since Plaintiffs do not allege another basis for personal jurisdiction, they fail to show that this Court has personal jurisdiction over Difatta, O'Malley, and Wagner.  *See Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (plaintiff must present "prima facie case of personal jurisdiction to satisfy its burden").  Lack of personal jurisdiction is sufficient grounds for dismissing these Defendants; however, because Plaintiffs allege that Defendants operated together as a RICO enterprise and because there is another forum with personal jurisdiction over all Defendants, the Court will consider whether transfer of venue would be in the interest of justice.

### B.

In addition to seeking dismissal for lack of personal jurisdiction, Defendants request that this case be dismissed for improper venue.  Alternatively, Defendants request that the case be transferred under 28 U.S.C. § 1404(a) to the Eastern District of Louisiana.[7]  Plaintiffs argue that they will suffer undue prejudice at this stage of the proceedings if they are required to "go to the additional expense and distance of litigating this case in New Orleans."  Pls.' Response [25] at 16.  The Court has determined that it lacks personal jurisdiction over three Defendants; however, there is another forum with personal jurisdiction over all Defendants.  According to Fifth Circuit law, when "a court finds it lacks personal jurisdiction, it may dismiss the action … [or] transfer the action to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action."  *Herman v. Cataphora, Inc.*, 730 F.3d 460,

---

[7] All Defendants except Difatta seek transfer of venue.  In light of the allegations against Defendants, the Court will consider whether it is appropriate to transfer the entire case.

466 (5th Cir. 2013) (citations omitted); 28 U.S.C. § 1406(a).  As such, this Court will consider whether a transfer of venue is in the interest of justice.

Plaintiffs allege in the complaint that "venue is proper in this Court under 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b), because the interests of justice and a substantial part of the events giving rise to these claims occurred in this district."  Compl. [1] at 5.  Defendants contest this assertion and argue that most or all of the alleged racketeering activity happened in the Eastern District of Louisiana.  Under the general venue statute, 28 U.S.C. § 1391(b), a civil lawsuit may be filed in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to a new federal venue if the transfer is for the convenience of the parties and in the interest of justice.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 (5th Cir. 2008).  To make this determination, a court must consider: (1) the relative ease of access to sources of proof; (2) availability of the compulsory process to secure the attendance of witnesses; (3) attendance costs for willing witnesses; (4) all other practical problems that would make the trial of a case easy, expeditious, and inexpensive; (5) administrative difficulties from court congestion; (6) local interest in having localized interests decided at home; (7) familiarity of the forum with the law that will govern the case; and (8) avoidance of unnecessary problems of conflict of laws or problems in applying foreign law.  *Id*. at 315 (citations and quotation marks omitted).

Defendants argue that the *Volkswagen* factors weigh in favor of transferring this case to the Eastern District of Louisiana.  They argue that most of the evidence in this case is located in Louisiana and that most of the witnesses are residents of Louisiana and, therefore, would not be subject to this Court's subpoena power.  Defs.' Mem. Brief [15] at 14-16.  Defendants also contend that witnesses would incur excessive costs if they traveled from Louisiana to this Court and that residents of the Eastern District of Louisiana have a greater interest than the residents in this District in having the case decided at home.  Moreover, Defendants argue that the Eastern District of Louisiana would be more familiar with the law governing Plaintiffs' LRA claims.

All Defendants are residents of Louisiana and all of the post-Katrina cleanup work was performed in St. Bernard Parish, Louisiana, which falls within the Eastern District of Louisiana.[8] Although Plaintiffs claim that a substantial part of the events took place in Mississippi, that argument is not supported by the facts alleged in the complaint.  According to the complaint, Defendants' racketeering activity began in June 2006 and primarily took place in St. Bernard Parish.  Compl. [1] at 17-19.  The only facts regarding racketeering activity that occurred in Mississippi appear in three paragraphs of the complaint, and those facts concern Defendants' alleged attempts to withhold deposits and/or make extortionate demands to Plaintiff Farmer after he stopped working in Louisiana and returned to his home in Mississippi.  *See id*. at 18-20. Plaintiffs' RICO statements likewise refer to the alleged attempts to extort Plaintiff Farmer upon his return to Mississippi.[9]  Based on the complaint, Plaintiffs Causey and Casey were subjected to extortion and other racketeering action solely in St. Bernard Parish.  *Id*. at 20-21.  Plaintiffs do

---

[8] 28 U.S.C. § 98(a) ("The Eastern District comprises the parishes of Assumption, Jefferson, Lafourche, Orleans, Plaquemines, Saint Bernard, Saint Charles, Saint James, Saint John the Baptist, Saint Tammany, Tangipahoa, Terrebonne, and Washington.").

[9] "There are also telephonic wire evidentiary recordings provided by the FBI that indicate coconspirator Defendant O'Malley continued to attempt to extort Plaintiff Farmer over the telephone until he signed and faxed O'Malley an interstate wire release from his office in Mississippi on August 26, 2009, in furtherance to the fraudulent and extortionate scheme."  RICO Statement [38] at 9; RICO Statement [39] at 9.

not allege that any other racketeering activity took place in Mississippi; thus, it appears that a substantial part of the events giving rise to this lawsuit took place within the Eastern District of Louisiana such that this case could have been filed in that court.[10]

Plaintiffs do not directly respond to Defendants' argument regarding § 1404(a) and *Volkswagen*.  Instead, Plaintiffs assert that venue is proper in this Court based on RICO's venue provision, 18 U.S.C. § 1965(a), and that they would suffer undue prejudice if the case is transferred to Louisiana.  This Court has already determined that § 1965(a) is inapplicable as to Defendants Difatta, O'Malley, and Wagner.  In addition, Plaintiffs do not dispute that the *Volkswagen* factors weigh in favor of transfer.  It, therefore, appears that Plaintiffs concede venue is proper in the Eastern District of Louisiana.  *See Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim.") (citations omitted).  Accordingly, all considered, this Court finds that a transfer of venue to the Eastern District of Louisiana is in the interest of justice.

### III.

Based on the above analysis, Defendants' motions are GRANTED IN PART AND DENIED IN PART.  The motions are DENIED to the extent they seek dismissal of this action.  As to Defendants' request for transfer of venue, the motions are GRANTED.  Since this Court lacks personal jurisdiction over certain Defendants and venue is inappropriate in this District, it is hereby ORDERED that this case is transferred to the Eastern District of Louisiana under 28 U.S.C. § 1406(a).

---

[10] Plaintiffs also advance a co-conspirator argument as a basis for venue in this Court.  *See* Pls.' Response [25] at 14 ("Indeed, the agent venue provision of § 1965(a) is related to the co-conspirator theory of venue.  Under the co-conspirator theory, where multiple defendants are alleged to have participated in a common scheme to defraud, venue is proper in any forum which has sufficient contacts with one co-conspirator.").  However, even assuming the co-conspirator argument is applicable, only limited instances of alleged racketeering took place in Mississippi.  The facts in the complaint show that a substantial part of the events giving rise to this lawsuit took place in Louisiana.

SO ORDERED, this the 22nd day of August 2014.

**/s/Debra M. Brown**_____
**UNITED STATES DISTRICT JUDGE**