UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **STEPHEN P. FARMER ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **No. 14-1945** |
| **D&O CONTRACTORS, INC. ET AL.** | **SECTION I** |

## ORDER AND REASONS

Before the Court is a motion[1] filed by defendants, D&O Contractors, Inc., John Michael O'Malley, and Daniel P. Wagner (collectively, the "D&O Defendants"), to dismiss the above-captioned matter pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Jeff Difatta ("Difatta"), Lance Licciardi ("Licciardi"), and Randy Nunez ("Nunez") joined in the D&O Defendants' motion.[2] Additionally, defendant, Perry M. Nicosia ("Nicosia"), filed a similar motion[3] to dismiss pursuant to Rule 12(b)(6). Plaintiffs oppose all the motions to dismiss.[4]

As discussed at the February 9, 2015 status conference, the Court, with the consent of counsel, considers the above-described motions to dismiss as motions for summary judgment.[5] For the following reasons, such motions are **GRANTED**.

Also before the Court is a motion[6] filed by Nicosia for sanctions pursuant to Rule 11. Plaintiffs oppose the motion.[7] For the following reasons, such motion is **DENIED**.

---

[1] R. Doc. No. 68.
[2] R. Doc. Nos. 71, 73.
[3] R. Doc. No. 120.
[4] R. Doc. No. 90.
[5] R. Doc. No. 114, at 2.
[6] R. Doc. No. 94. Also before the Court is a motion filed by Nicosia to continue certain deadlines. R. Doc. No. 132. In light of the dismissal of plaintiffs' claims, such motion is **DISMISSED AS MOOT**.

## BACKGROUND

Plaintiffs were debris-removal subcontractors who worked in St. Bernard Parish in the aftermath of Hurricane Katrina.[8] Plaintiffs allege that defendants demanded "protection money" and wrongfully diverted payments for work that plaintiffs performed.[9] This alleged activity eventually led plaintiff, Stephen P. Farmer ("Farmer"), to approach the FBI in June 2006 because he believed that he was the victim of a crime.[10] Farmer agreed to operate as an FBI informant during its investigation into defendants' alleged activity.[11] In October 2010, the FBI closed its investigation which did not result in any indictments.[12]

After the close of the investigation, Farmer consulted counsel regarding his potential civil claims.[13] Plaintiffs filed the original complaint in this matter on July 30, 2012, in the U.S. District Court for the Northern District of Mississippi,[14] asserting claims pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and Louisiana's equivalent statute, the Louisiana Racketeering Act, La. Rev. Stat. § 15:1351 *et seq.*[15] On August 22, 2014, the above-captioned matter was transferred to this Court,[16] and the D&O Defendants' motion to dismiss, along with the joinders filed by Difatta, Licciardi, and Nunez, were taken under advisement by the Court on December 3, 2014.[17]

---

[7] R. Doc. No. 104.
[8] R. Doc. No. 91-2, ¶ 1.
[9] R. Doc. No. 91-2, ¶ 2.
[10] R. Doc. No. 91-2, ¶ 5.
[11] R. Doc. No. 91-1, ¶ 4.
[12] R. Doc. No. 91-1, ¶ 6; *see* R. Doc. No. 114, at 2.
[13] R. Doc. No. 91-2, ¶¶ 11-12.
[14] R. Doc. No. 1.
[15] R. Doc. No. 1, ¶¶ 62-109; *see also* R. Doc. No. 124, ¶¶ 73-131.
[16] R. Doc. No. 43.
[17] R. Doc. Nos. 68, 71, 73.

Nicosia was added as a defendant in plaintiffs' first amended complaint which was filed on December 2, 2014.[18] On January 13, 2015, before plaintiffs had even served him, Nicosia filed his motion for sanctions, and such motion was taken under advisement on February 4, 2015.[19] Nicosia was eventually served on February 24, 2015.[20]

Following the February 9, 2015 status conference, during which the Court advised counsel, without objection, that the motions to dismiss would be treated as motions for summary judgment, the parties were afforded the opportunity to file additional briefing and such motions were taken under advisement on February 18, 2015.[21] Plaintiffs filed a second amended complaint on February 20, 2015.[22] Nicosia filed his motion to dismiss on February 18, 2015, which was taken under advisement on February 25, 2015.[23]

## LAW AND ANALYSIS

### I. Summary Judgment

#### A. Standard of Law

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary

---

[18] R. Doc. No. 83.
[19] *See* R. Doc. No. 94.
[20] R. Doc. No. 128. Because Nicosia has now been personally served, the Court need not address Nicosia's alternative argument that dismissal of the claims against him is appropriate due to insufficient service of process pursuant to Rule 12(b)(5). *See* R. Doc. No. 120-2, at 3-4.
[21] R. Doc. No. 114, at 2-3.
[22] R. Doc. No. 124.
[23] R. Doc. No. 120; *see also* R. Doc. No. 114, at 3.

judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

### B. Discussion

All defendants contend that plaintiffs' claims are time-barred. "Civil RICO claims have a four-year statute of limitations." *Joseph v. Bach & Wasserman, L.L.C.*, 487 F. App'x 173, 176 (5th Cir. 2012); *see also Rotella v. Wood*, 528 U.S. 549, 552 (2000). The Fifth Circuit "has adopted an 'injury discovery rule,' whereby 'a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury.'" *Joseph*, 487 F. App'x at 176 (quoting *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir. 2000)). "It is discovery of the injury, and not

other elements of a RICO claim, that starts the limitations period running." *Id.* (citing *Rotella*, 528 U.S. at 556). "In *Love*, [the Fifth Circuit] also adopted the 'separate accrual rule,' stating that '[w]hen a pattern of RICO activity causes a continuing series of separate injuries, the 'separate accrual' rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury.'" *Id.* (quoting *Love*, 230 F.3d at 773).

The Louisiana Racketeering Act is subject to a five-year prescriptive period. La. Rev. Stat. § 15:1356(H); *Ames v. Ohle*, 97 So. 3d 386, 391 (La. App. 4 Cir. 2012). "Prescription begins to run against a claimant when he obtains actual or constructive knowledge of facts indicating a cause of action." *Ames*, 97 So. 3d at 394 (citing *Barbe v. Am. Sugar Refining, Inc.*, 83 So. 3d 75, 83 (La. App. 4 Cir. 2011), *writ denied*, 85 So. 3d 92 (La. 2012)). "Constructive knowledge of facts indicating a cause of action is whatever notice is enough to excite attention and put the injured party on guard and call for further inquiry." *Id.*

According to Farmer,[24] the alleged "extortion scam actually began in the spring of 2006,"[25] and Farmer "went to the FBI in June of 2006 when [he] could get no relief" despite his alleged "repeated protests for having to pay part of [his] FEMA earnings to locals in Saint

---

[24] As defendants have noted, plaintiffs' arguments and evidence relate only to Farmer's assertion of equitable tolling, *see, e.g.*, R. Doc. No. 119, at 1; R. Doc. No. 122, at 2, and plaintiffs do not present any evidence with respect to Farmer's co-plaintiffs. *But see* R. Doc. No. 127, at 24 ("Plaintiffs respectfully submit that these same goals of weighing the remedial purposes of the statute to allow plaintiffs to vindicate their rights through equitable tolling after the statute of limitations has run should also be applied to allow Plaintiffs Casey and Causey to pursue their RICO action—especially under the extraordinary circumstances here where the Defendants coconspirators [sic] have put forward no plausible defense to the extortionate scheme they engaged in that gives rise to a remedy through a civil action under the RICO statute."). Nonetheless, because equitable tolling does not even apply to Farmer's claims, the Court need not address the issue—all plaintiffs' claims are time-barred regardless of whether Farmer's participation in the FBI investigation is relevant to the claims of his co-plaintiffs.

[25] R. Doc. No. 91-2, ¶ 3.

Bernards [sic] Parrish [sic]."[26] Defendants assert that Farmer was actually aware of his injury prior to June 2006, but that June 2006 is the latest possible date at which Farmer's RICO cause of action should be deemed to have accrued.[27] Plaintiffs do not contest that they were aware of their causes of action by the time that Farmer approached the FBI.[28] Accordingly, for the purposes of deciding these motions, the Court finds that plaintiffs' causes of action accrued no later than June 2006.

Because RICO is subject to a four-year statute of limitations, and because the Louisiana Racketeering Act is subject to a five-year prescriptive period, all of plaintiffs' claims prescribed in June 2010 and June 2011, respectively. As stated, the original complaint was not filed until July 30, 2012, over a year after plaintiffs' state law claims had prescribed.[29] However, plaintiffs allege that "the doctrine of equitable tolling applies to all the[ir] claims . . . since, for example, the FBI unintentionally misled Plaintiff Farmer into believing he had a right to file his RICO action after the FBI investigation was completed. Plaintiff Farmer relied on that advice and

---

[26] R. Doc. No. 91-2, ¶ 5.
[27] R. Doc. No. 68-2, at 3-5; R. Doc. No. 73-1, at 2-4; R. Doc. No. 120-2, at 6-7.
[28] Arguably, plaintiffs' second amended complaint implicates the "separate accrual rule" where it alleges that plaintiffs are presently suffering injuries due to defendants' continued retention of illegally obtained funds. *See, e.g.*, R. Doc. No. 124, ¶ 68 ("The coconspirator Defendants have never to this day returned any of the $1 a cubic yard earnings of Plaintiff Farmer they unlawfully and extortionately obtained from him."); *cf.* R. Doc. No. 68-2, at 6 ("Plaintiffs allege that the Defendants continue to wrongfully withhold 'to this day' some fraction of the money they 'extortionately' obtained from Plaintiffs in 2006 . . . [b]ut these allegations are insufficient to avoid dismissal, because such continued retention does not constitute a separate injury occurring within the limitations period."). However, "[e]ven if [defendants] continued to make a profit off of the [plaintiffs'] property that [they] allegedly illegally possessed, it is the initial taking of that property, not any further actions [defendants] took with it, that constitutes a RICO injury." *Joseph*, 487 F. App'x at 178.
   The Court also notes that plaintiffs have not provided any evidence as to the dates that any work was performed or the dates that any funds were allegedly withheld.
[29] *See* R. Doc. No. 1.

information provided [to] him by the government that he had a right to file his RICO action after the FBI investigation was complete so as not to compromise the investigation."[30]

"Equitable tolling 'applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some other extraordinary way from asserting his rights.'" *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 357 (5th Cir. 2011) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)); *see also Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."). "But a plaintiff who 'fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.'" *Jaso*, 435 F. App'x at 357 (quoting *Baldwin Cnty. Welcome Ctr. v. Brown*, 446 U.S. 147, 152 (1984)). "[A] 'garden variety claim of excusable neglect' does not support equitable tolling." *Rashidi*, 96 F.3d at 128 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). "Where [the plaintiff] could have filed his claim properly with even a modicum of due diligence, we find no compelling equities to justify tolling." *Id.*

"The party who invokes equitable tolling bears the burden of demonstrating that it applies in his case." *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002). "[T]hese equitable doctrines 'are to be applied sparingly.'" *Id.* (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)); *see also Irwin*, 498 U.S. at 96 ("Federal courts have typically extended equitable [tolling] relief only sparingly.")

Plaintiffs do not assert that they were actively misled by any defendants about their causes of action, nor have they produced any evidence that would support such an assertion.

---

[30] R. Doc. No. 124, ¶ 34.

Accordingly, the question before the Court is whether plaintiffs acted diligently but were "prevented in some other extraordinary way from asserting [their] rights."[31] *Jaso*, 435 F. App'x at 357.

Farmer's co-plaintiffs' lack of diligence is apparent from the absence of any evidence indicating that they took any actions whatsoever while Farmer was participating in the FBI investigation. With respect to Farmer, himself, although assisting the FBI is commendable, the Court finds that he also failed to act diligently to protect his civil claims. Farmer admits that he did not consult an attorney until after the FBI investigation concluded.[32] Although Farmer's counsel "indicated" to him that "equitable tolling should apply to [his] case,"[33] Farmer has not produced any evidence to demonstrate that he tried to ascertain for himself the time limits on his claims until the investigation *had already been completed*. Instead, Farmer states that he "relied upon the advice of FBI agent Goodson and the FBI in not filing my lawsuit until after the FBI's investigation was completed, because I *assumed* that FBI investigators would know that I would

---

[31] The Court notes that plaintiffs have not discussed whether the above-described equitable tolling principles apply to their state law claims or whether a state law tolling principle should apply. *Cf. Lozano*, 134 S. Ct. at 1232 ("Because the doctrine [of equitable tolling] effectively extends an otherwise discrete limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent.").

Under Louisiana law, the principle of *contra non valentem* suspends the running of a prescriptive period when the circumstances of the case fall under one of four categories: "(1) when courts are legally closed; (2) when administrative or contractual restraints delay the plaintiff's action; (3) when the defendant prevents the plaintiff from bringing suit; and (4) when the plaintiff does not know nor reasonably should know of the cause of action." *Bergeron v. Pan Am. Assurance Co.*, 731 So. 2d 1037, 1042 (La. App. 4 Cir. 1999) (internal quotation marks omitted); *Corsey v. State Dep't of Corrections*, 375 So. 2d 1319, 1321-22 (La. 1979). "Louisiana jurisprudence recognizes that *contra non valentem* is an exceptional remedy which is in direct contradiction to the articles in the Civil Code and therefore should be strictly construed." *Bergeron*, 731 So. 2d at 1042; *see also Specialized Loan Servicing, LLC v. January*, 119 So. 3d 582, 585 (La. 2013). For the reasons discussed herein, plaintiffs have not presented any evidence to support the application of *contra non valentem* with respect to their state law claims.

[32] R. Doc. No. 91-2, ¶ 12; R. Doc. No. 127-1, ¶ 7, at 4.
[33] R. Doc. No. 127-1, ¶ 7, at 4.

8

still have the right to file my RICO case against Defendants after the FBI investigation was completed."[34]

Making such an assumption is not the hallmark of diligence—consultation with a competent attorney would have advised Farmer of the time limitations on his claims before they became an issue. Although Farmer now asserts that the FBI unintentionally misled him,[35] he has not offered a reason for failing to consult counsel or otherwise investigate and confirm the FBI's purported assertions regarding his civil claims.[36] Accordingly, because "a 'garden variety claim of excusable neglect' does not support equitable tolling," *Rashidi*, 96 F.3d at 128, the Court finds that Farmer's actions in pursuing his claims fall short of the diligence that was required of him.

Even if Farmer had acted diligently, the Court would find that he was not "prevented in some other extraordinary way from asserting his rights." *See Jaso*, 435 F. App'x at 357. Farmer

---

[34] R. Doc. No. 127-1, ¶ 7, at 3-4 (emphasis added). Plaintiff contends that he was given this advice by FBI Agent Goodson "in 2006," and that he was "*repeatedly* advised by the FBI that it would be preferable for me to wait to file civil claims." R. Doc. No. 127-1, ¶ 7, at 2-3. Plaintiffs have not offered any evidence that Agent Goodson is a lawyer.

[35] R. Doc. No. 127-1, ¶ 7, at 4.

[36] Plaintiffs cite a number of cases involving equitable tolling as it relates to discrimination claims. *E.g.*, R. Doc. No. 115, at 4; *see, e.g.*, *Ramirez*, 312 F.3d 178; *Chappell v. Emco Mach. Works. Co.*, 601 F.2d 1295 (5th Cir. 1979). Plaintiffs assert that because a person who is prevented from filing a complaint due to the EEOC's erroneous advice is entitled to equitable tolling, *see Ramirez*, 312 F.3d at 184, Farmer should likewise be entitled to equitable tolling because he was given erroneous advice by the FBI. *See* R. Doc. No. 127, at 10. However, Farmer has not identified any case that has applied this concept in the RICO context. As noted by Nicosia, "[e]quitable tolling is available in employment cases when a plaintiff is misled by the EEOC because in employment cases, an aggrieved employee is statutorily required to (1) file an administrative charge with the EEOC; and (2) to receive notification from the EEOC of his right to bring a private civil action before he may file suit against his employer." R. Doc. No. 120-2, at 10 (citing *Walker v. St. Tammany Parish Sch. Bd.*, No. 13-6347, 2015 WL 280579 (E.D. La. Jan. 22, 2015)). Conversely, nothing in this case presents any concerns regarding statutory exhaustion requirements or filing prerequisites. As discussed below, plaintiff was under no compulsion to participate in the FBI investigation or refrain from filing a complaint, and there is no exhaustion requirement connected with his RICO or state law claims.

was free to end his participation in the FBI investigation and/or file his complaint at any time. According to FBI Agent Goodson:

> When Mr. Farmer indicated to me that he intended to file a civil RICO lawsuit, I advised him that pursuing a civil action would likely compromise the criminal investigation. Mr. Farmer *concurred* that he did not want to compromise the ongoing investigation and indicated that he would delay filing a civil complaint until after the criminal investigation was complete[.][37]

Similarly, Farmer asserts, "During the course of my cooperation and assistance with the FBI investigation I was repeatedly advised by the FBI that it would be *preferable* for me to wait to file civil claims regarding the extortionate conduct they were investigating so I would not compromise the government's investigation."[38]

Farmer's former employee, Jerry Baker, observed some of these discussions:

> I was present with Stephen Farmer and the FBI on several occasions throughout the investigation when the FBI agents advised Stephen Farmer that *they would prefer* that he not file his civil claims that are now before this Court until after their investigation. The FBI indicated to Stephen Farmer that he would be able to file his civil claims after the investigation and if he filed his civil case claims during the ongoing investigation the investigation could be compromised.[39]

According to Farmer's own statement, he was never *prevented* by the FBI from filing his claims. He participated *voluntarily* in the FBI investigation, and he *chose* to forego pursuing his civil claims in order to protect that investigation.[40] Although Farmer contends that he received

---

[37] R. Doc. No. 91-1, ¶ 5 (emphasis added). Agent Goodson does not state in his affidavit that he ever told Farmer not to file his civil claims, or that he told Farmer his claims would not be time-barred.

[38] R. Doc. No. 127-1, ¶ 7, at 2-3 (emphasis added).

[39] R. Doc. No. 127-3, ¶ 6 (emphasis added).

[40] The Court requested that the parties provide supplemental briefing regarding "whether plaintiffs could have filed their complaint under seal to interrupt the statute of limitations without revealing any potentially confidential information related to the FBI investigation." R. Doc. No. 114, at 3. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents [but] [i]t is uncontested . . . that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have

incorrect legal advice from the FBI, nothing prevented Farmer from consulting counsel to research and corroborate Agent Goodson's purported statements, and it was still Farmer's choice to delay pursuing his civil claims. Unfortunately, Farmer's choice did not toll the statute of limitations with respect to his causes of action.[41]

## II. Sanctions

Nicosia has moved for sanctions against plaintiffs' counsel because he allegedly "completely ignored existing rules and legal precedent when [he] filed [plaintiffs'] Amended Complaint, as Plaintiffs' claims against Mr. Nicosia are clearly time-barred and would not relate

---

become a vehicle for improper purposes." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978); *accord United States v. Holy Land Found. for Relief and Dev.*, 624 F.3d 685, 689-90 (5th Cir. 2010); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993); *see also BCR Safeguard Holding, L.L.C. v. Morgan Stanley Real Estate Advisor, Inc.*, No. 13-66, 2013 WL 309010 (E.D. La. Jan. 25, 2013).

      Some courts have noted that a plaintiff may file a complaint under seal in order to preserve the plaintiff's rights without revealing the ongoing criminal investigation. *See City of Syracuse v. Loomis Armored US, LLC*, 900 F. Supp. 2d 274, 294-95 (N.D.N.Y. 2012) ("Although Plaintiff implies that this request by the federal agents prevented it from pursuing its rights in November of 2009, Plaintiff ignores the fact that it could have filed its complaint under seal in order to preserve its rights without revealing the ongoing criminal investigation.") (citing *United States v. Funds Representing Proceeds of Drug Trafficking in the Amount of $75,868.62*, 52 F. Supp. 2d 1160, 1161 (C.D. Cal. 1999)); *see also Hayes v. Dep't of Educ. of the City of N.Y.*, 20 F. Supp. 3d 438, 444-45 (S.D.N.Y. 2014) (explaining that "[a]lthough filing an action in compliance with Rule 3 . . . stops the statute of limitations from running, such a filing does not toll the statute of limitations beyond the period for service provided by Rule 4(m)," but noting that the "Plaintiff applied for and received . . . an extension to serve defendant . . . , as is permitted by Rule 4(m)") (internal quotation marks omitted). Farmer potentially could have timely filed his original complaint under seal and then obtained an extension of time to perfect service pursuant to Rule 4(m), but he never consulted counsel about that possibility. *But see* R. Doc. No. 127, at 26.

[41] In support of their position, defendants cite several cases which they claim are "directly on point." R. Doc. No. 121, at 1; *accord* R. Doc. No. 68-2, at 8; R. Doc. No. 119, at 2; R. Doc. No. 120-2, at 8-9; *see Winding v. City of New Orleans*, No. 14-2460, 2015 WL 222365 (E.D. La. Jan. 14, 2015); *Ames v. Ohle*, No. 09-7058, 2010 WL 5055893 (E.D. La. Dec. 1, 2010); *Price v. PCS Nitrogen Fertilizer, L.P.*, No. 03-153, 2010 WL 1005181 (M.D. La. Mar. 15, 2010); *Astoria Entm't, Inc. v. Edwards*, 159 F. Supp. 2d 303 (E.D. La. 2001). However, all of these cases are factually distinguishable. The Court decides the above-captioned matter on the basis of the unique facts presented in the record.

back to the initial Complaint, even if this Court were to find that the Complaint is somehow not time-barred."[42] Nicosia contends that "the legal position taken by Plaintiffs it too implausible to insulate Plaintiffs' counsel from sanctions under Rule 11."[43]

Rule 11 requires in pertinent part that in any "pleading, written motion, or other paper" submitted to the Court, "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court *may*[44] impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1) (emphasis added).[45]

"Rule 11 imposes an objective standard of 'reasonableness under the circumstances.'" *Pillar Panama, S.A. v. DeLape*, 326 F. App'x 740, 744 n.5 (5th Cir. 2009) (quoting *Thomas*, 836 F.2d at 873). "'[T]he imposition or denial of sanctions of necessity involves a fact-intensive inquiry into the circumstances surrounding the activity alleged to be a violation of Rule 11.'" *Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 566 (5th Cir. 2006) (quoting *Thomas*, 836 F.2d at 873). "Because Rule 11 'is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories,' an attorney need not advance a winning argument to avoid

---

[42] R. Doc. No. 94-1, at 6 (emphasis omitted). Because the Court finds that even plaintiffs' original complaint was untimely, the Court need not address Nicosia's alternative argument that the claims against him do not relate back to the filing of the original complaint. *See* R. Doc. No. 120-2, at 13-18.
[43] R. Doc. No. 94-1, at 6.
[44] The Court notes that Rule 11 previously *required* the imposition of sanctions. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 876 (5th Cir. 1988) (en banc) (quoting a previous version of Rule 11 that used the word "shall" instead of the word "may").
[45] Motions for sanctions are subject to strict filing requirements with which Nicosia has complied. *See* Fed. R. Civ. P. 11(c)(2).

Rule 11 sanctions." *LaSalle Nat'l Bank of Chicago v. County of DuPage*, 10 F.3d 1333, 1338 (7th Cir. 1993) (quoting *Brubaker v. City of Richmond*, 943 F.2d 1363, 1378 (4th Cir. 1991)).

Under the unique circumstances of this case, the Court declines to find that plaintiffs' counsel breached his Rule 11 obligations. The Court finds that no award of sanctions is warranted.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the motions for summary judgment are **GRANTED** and that all federal and state claims in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion for Rule 11 sanctions is **DENIED**.

**IT IS FURTHER ORDERED** that the motion to continue certain deadlines is **DISMISSED AS MOOT**.

New Orleans, Louisiana, March 13, 2015.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**